[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-14086

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 18, 2004
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00484-CV-S-NE

JOSEPH G. GIVENS, an individual,

Plaintiff-Appellant,

versus

ALABAMA DEPARTMENT OF CORRECTIONS,
MICHAEL W. HALEY,
individually, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 18, 2004)**

Before BLACK and KRAVITCH, Circuit Judges, and STROM*, District Judge.

BLACK, Circuit Judge:

_____

* Honorable Lyle E. Strom, United States District Judge for the District of Nebraska,
sitting by designation.

Alabama inmates participating in work release have part of their wages deposited by the state's Department of Corrections (the Department) in bank accounts in their names. Although interest accrues on these accounts, Department policy prohibits inmates from receiving it. Appellant Joseph G. Givens, a former work release participant, filed suit under 42 U.S.C. § 1983, claiming the Department's policy violated both federal and state law. In particular, Givens argued the Department's policy constituted an unlawful taking. The district court dismissed the action for failure to state a claim, and we affirm.

## I. BACKGROUND

Alabama statutorily authorizes the Department to adopt regulations and policies establishing a work-release program for persons incarcerated by the state. *See* Ala. Code § 14-8-2. This authority is constrained by several relevant limitations. First, any wages earned by an inmate must be paid directly to the Department. *Id.* § 14-8-6. Second, the Department may withhold part of the wages received, but the withholding cannot exceed a set percentage of the total wages earned. *Id.* Third, the remainder of an inmate's earnings—less any withdrawals made by the inmate during incarceration—must be paid to the inmate upon release. *Id.*

2

Pursuant to its statutory authority, the Department implemented a work release program. This program is described in Administrative Regulation No. 410, which provides that, after the Department has withheld its percentage of an inmate's earnings,[1] the remainder is to be deposited in a Prisoner Money on Deposit (PMOD) account in the inmate's name. Dep't of Corr. Admin. Reg. No. 410, § VII.B (Sept. 2, 1997).

In Alabama, PMOD accounts are administered in accordance with the Department's *Manual of Accounting Procedures for Institutions and Community Based Facilities*, which specifically states that "inmates are not entitled to receive interest on PMOD accounts."[2] Ala. Dep't of Corr. Manual of Accounting Procedures for Insts. and Cmty. Based Facilities, ch. 5, at 26.

Givens was incarcerated in Alabama from 1986 until his release in 2002. During this time, he participated in the Department's work-release program. The wages he earned were paid directly to the Department, and, after the Department withheld its percentage, the remainder was deposited in a PMOD account in his name. Upon his release, Givens was paid the amount that had been deposited in

---

[1] At present, the Department is authorized to withhold up to 40 percent of each inmate's earnings. Ala. Code § 14-8-6. Prior to 1992, this percentage was lower.

[2] The Department uses the interest that accrues on the PMOD accounts to (1) offset the costs of administering the accounts, and (2) fund various recreational activities for the inmates.

3

his PMOD account less the withdrawals he had made while incarcerated. In accordance with Department policy, Givens did not receive any of the interest that had accrued on his account.

Givens commenced this action against the Department and assorted state officials by filing a complaint in the Northern District of Alabama. Givens alleged the Department's refusal to allow him to collect the interest that had accrued on his PMOD account (1) constituted a wrongful taking under both federal and state law, and (2) violated § 14-8-35(4) of the Alabama Code, which prohibits the exploitation of inmates. The district court dismissed the takings claims, concluding Givens had no property interest in the interest on his account. The district court also dismissed the claim based on the alleged violation of § 14-8-35(4) on the ground it was simply not "cognizable." This appeal followed.

## II. STANDARD OF REVIEW

We review the district court's dismissal of a complaint for failure to state a claim de novo. *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1090 (11th Cir. 2002).

III.  DISCUSSION

We are asked to decide only whether the district court erred in dismissing Givens's claims that an unlawful taking occurred.[3]

The Takings Clause in the Fifth Amendment, which was made applicable to the States through the Fourteenth Amendment, provides that "'private property shall not be taken for public use without just compensation.'" *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163–64, 118 S. Ct. 1925, 1930 (1988) (quoting U.S. Const. amend. V).  The Alabama Constitution contains virtually identical wording.  *See* Ala. Const. art. 1, § 23.  Thus, to state a Takings claim under either federal or Alabama law, a plaintiff must first demonstrate that he possesses a "property interest" that is constitutionally protected.  *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000–01, 104 S. Ct. 2862, 2871 (1984); *Penn Cent. Transp. Co. v. New York*, 438 U.S. 104, 125, 98 S. Ct. 2646, 2659 (1978); *Jackson v. Birmingham Foundry & Mach. Co.*, 45 So. 660, 662–63 (Ala. 1908).  Only if the plaintiff actually possesses such an interest will a reviewing court then determine whether the deprivation or reduction of that interest constitutes a

---

[3] Givens initially claimed the Department's conduct also violated § 14-8-35(4) of the Alabama Code.  Given that (1) the district court concluded this claim was not cognizable, and (2) Givens did not mention it in the argument section of his brief, we conclude he has abandoned it. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1328 n.4 (11th Cir. 2004).

"taking." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998).

The Takings Clause protects private property; it does not create it. *See Phillips*, 524 U.S. at 164, 118 S. Ct. at 1930. Thus, to determine whether a particular property interest is protected, we look to "existing rules or understandings that stem from an independent source such as state law." *Id.* (internal quotation marks and citation omitted); *Webb's Fabulous Pharmacies v. Beckwith*, 449 U.S. 155, 161, 101 S. Ct. 446, 451 (1980).

Here, Givens argues that, as an Alabama inmate, he had a property interest in the interest that accrued on his PMOD account. Given that whether an Alabama inmate possesses such a property interest is a question of first impression in this Circuit, we find it helpful to begin by setting forth the cases that shape our analysis.

A.    *Relevant Precedent*

We commence by briefly mentioning two relevant Supreme Court decisions. In *Webb's Fabulous Pharmacies*, the Supreme Court held that a state violated the Takings Clause when it took for itself—pursuant to statutory authority—the interest that accrued on an interpleader fund deposited in the registry of a county court, where a fee—prescribed by a different statute—was also charged for the

6

clerk's services in receiving the fund into the registry.  449 U.S. at 164, 101 S. Ct. at 452.  More recently, in *Phillips*, the Court held that the interest paid on IOLTA accounts[4] is the property of the client.  524 U.S. at 160, 118 S. Ct. at 1928.

We next turn to the relevant published decisions from our sister Circuits.  In *Schneider*, the Ninth Circuit held inmates have a protected property interest in the interest that accrues on their accounts, even where state statute provides otherwise.  151 F.3d at 1201.  In reaching this conclusion, the Ninth Circuit relied on both *Phillips* and *Webb's Fabulous Pharmacies*.  151 F.3d at 1199.  And, as did the Supreme Court, the Ninth Circuit stressed the pedigree of the common law maxim that interest should follow principal.  *See id.* at 1200–01.[5]

The Fourth Circuit reached the opposite result in *Washlefske v. Winston*, 234 F.3d 179 (4th Cir. 2000) .  In that case, Virginia had directed its Department of Corrections to invest prisoner funds at its discretion and to use any interest

---

[4] *Phillips* involved a state that had adopted an Interest on Lawyers Trust Account (IOLTA) program in which certain client funds held by an attorney were deposited in bank accounts.  524 U.S. at 159–160, 118 S. Ct. at 1927–28.  The interest generated was given to foundations financing legal services for low income persons.  *Id.* at 160, 118 S. Ct. at 1928.

[5] The Ninth Circuit later clarified that, where a state statute establishes the interest earned on inmate accounts is to be used to cover the costs of administering them, there is no "taking" when the interest is used for that purpose.  *See McIntrye v. Bayer*, 339 F.3d 1097, 1101–02 (9th Cir. 2003) (concluding that there must be "net loss" to the inmate for a "taking" to have occurred).  The Fifth Circuit reached the same result on similar facts in *Hatfield v. Scott*, 306 F.3d 223 (5th Cir. 2002), concluding there was no need to determine whether the state statute at issue established a property interest, given that there was no "taking" and the inmate had waived whatever right to the interest he had.  *Id.* at 229.

7

earned for the benefit of the general prison population. *Id.* at 181. The Fourth

Circuit ultimately held Virginia inmates did not have a protected property interest

in the interest on their accounts. *Id.* at 185–86. In reaching this conclusion, the

Fourth Circuit noted that, because inmates at common law traditionally had no

right to earn wages, any rights they currently possessed extended only so far as

Virginia statute or regulation provided. *Id.* at 184–86 (distinguishing *Phillips* and

*Webb's Fabulous Pharmacies*). The Fourth Circuit further noted that, because

neither statute nor regulation provided that inmates were to receive the interest on

their accounts, inmates had no property right in any interest that accrued. *Id.* at

185–86. Rather, all the inmates had was a limited property right in the amounts

deposited in their names—specifically, the inmates possessed the limited right to

access their deposits when permitted by statute, regulation, or policy. *See id.*

B.    *Analysis*

Here, like the Ninth Circuit in *Schneider* and the Fourth Circuit in

*Washlefske*, we are presented with a state scheme—Alabama's—that prohibits

inmates from receiving the interest that accrues on their accounts. Our task is thus

to determine whether an Alabama property interest is implicated—i.e., either one

8

that existed at the time Alabama adopted the common law of England, or one that

Alabama subsequently created.[6]

1.      *Whether a Property Interest Existed at Common Law*

We now address whether Alabama inmates have a common law property

right in the interest that accrues on their accounts.  *See Washlefske*, at 184–85;

*Schneider*, 151 F.3d at 1200–01.  Certainly, non-inmates have such a property

right.  *See, e.g., Phillips*, 524 U.S. at 165–66 & n.5, 118 S. Ct. at 1930–31 & n.5

(listing cases applying the common law maxim that interest should follow

principal); *Freeman v. Young*, 507 So. 2d 109, 110 (Ala. Civ. App. 1987) (quoting

*Webb's Fabulous Pharmacies* and holding that, where one party in an interpleader

action receives half of the amount deposited with the court, that party is entitled to

half of the interest as well).  Givens argues the interest-follows-principal maxim

should apply to inmate accounts.  We disagree for three reasons.

---

[6] Since Alabama adopted the common law of England many years ago, *see* Ala. Code § 1-3-1 (adopting English common law to the extent it was not inconsistent with "the Constitution, laws, and institutions" of Alabama); *see also Neville v. Cheshire*, 50 So. 1005, 1006 (Ala. 1909) (observing that the common law of Alabama is rooted in ancient English common law), there are two likely grounds for arguing that a particular property interest is recognized in the state:  (1) the property interest existed in England at the time Alabama adopted English common law and is therefore part of Alabama law; or (2) Alabama subsequently created the property interest by—for example—enacting a statute, adopting a regulation, or implementing a policy.  *See, e.g., Washlefske*, 234 F.3d at 185; *Schneider*, 151 F.3d at 1200–01.

First, Givens's argument ignores both his status as an inmate and the fact

that, at common law, such status was significant.  Although non-inmates enjoyed

an assortment of property rights at common law, inmates did not:

> [A]ll property is derived from society, being one of those civil rights
> which are conferred upon individuals, in exchange for that degree of
> natural freedom which every man must sacrifice when he enters into
> social communities.  If therefore a member of any national
> community violates the fundamental contract of his association, by
> transgressing the municipal law, he forfeits his right to such
> privileges as he claims by that contract; and the state may very justly
> resume that portion of property, or any part of it, which the laws have
> before assigned him.

1 William Blackstone, Commentaries *299.  Indeed, at common law an inmate not

only did not have a property right in the product of his work in prison, but he also

could be forced to forfeit all rights to personal property.  *See Calero-Toledo v.*

*Pearson Yacht Leasing Co.*, 416 U.S. 663, 682, 94 S. Ct. 2080, 2091 (1974):

> The convicted felon forfeited his chattels to the Crown and his lands
> escheated to his lord; the convicted traitor forfeited all of his
> property, real and personal, to the Crown.  The basis for these
> forfeitures was that a breach of the criminal law was an offense to the
> King's peace, which was felt to justify denial of the right to own
> property.

(citations omitted); 4 William Blackstone, Commentaries *385 (explaining the

extent to which a convicted felon could be forced to forfeit various property

interests); *see also United States v. Kozminski,* 487 U.S. 931, 943–944, 108 S. Ct.

10

2751, 2760 (1988) (observing that requiring inmates to work without pay does not

violate the Thirteenth Amendment's prohibition against involuntary servitude);

*Downey v. Bituminous Casualty Corp.*, 349 So. 2d 1153, 1155 (Ala. 1977)

(observing that inmate labor does not have to be voluntary).  Thus, under

traditional common law in Alabama, an inmate had no property rights.

Accordingly, we cannot accept Givens's suggestion that the common law maxim

that interest follows principal applies where an inmate is involved.

Second, the only case directly on point that favors Givens is *Schneider*, and

that case frames the common-law inquiry too broadly.  *See* 151 F.3d at 1200–01.

Rather than merely asking whether interest followed principal at common law, *see*

*id.*, the Ninth Circuit should have instead analyzed the extent to which inmates at

common law enjoyed property rights.  Because the Ninth Circuit did not do this,

we are reluctant to construe *Schneider* as persuasive authority in this Circuit.

Third, as the Fourth Circuit noted in *Washlefske*, the Supreme Court's

holdings in *Phillips* and *Webb's Fabulous Pharmacies*—on which Givens

relies—*assumed* that a *complete* private property right existed in the principal:

> The holding in *Phillips*, as well as that in *Webb's Fabulous
> Pharmacies*, *assumes* that the claimants had a traditional private
> property right in the principal and concludes only that, as an incident
> to that ownership, the claimants also had a property right in the
> interest.  *See Phillips*, 524 U.S. at 164, 118 S. Ct. 1925 (noting its

11

assumption that clients' funds deposited in attorneys' trust accounts remained "freely available to the clients upon demand"); *Webb's Fabulous Pharmacies*, 449 U.S. at 160, 101 S. Ct. 446 (beginning its analysis with the observation that the "principal sum deposited in the registry of the law plainly was private property").

234 F.3d at 185. By contrast, in this case, Givens has at most a *limited* property right in the principal. Like the inmate in *Washlefske*, Givens is not free to receive the amounts deposited in cash, make withdrawals whenever he wants, or spend money without the Department's approval. *See id.*; Ala. Code § 14-8-6 (limiting the extent of an Alabama inmate's property interest in his earnings); Dep't of Corrs. Admin. Reg. No. 410, § VII (Sept. 2, 1997) (same). Thus, in regards to his interest-bearing account, Givens lacks the full rights of "possession, control, and disposition" a non-inmate would enjoy. *See Phillips*, 524 U.S. at 170, 118 S. Ct. at 1933. Therefore, neither *Phillips* nor *Webb's Fabulous Pharmacies* stand for the proposition that Givens has the same right as a non-inmate to receive interest.

For these reasons, we conclude Alabama inmates do not have a common law property right to the interest that accrues on their accounts.

2. *Whether Alabama Created a Property Interest by Enacting a Statute, Adopting a Regulation, or Implementing a Policy*

Although common law does not vest Givens with a property interest in the interest on his account, Alabama could still have created a property interest by

12

enacting a statute, adopting a regulation or implementing a policy. *See Tellis v. Godinez*, 5 F.3d 1314, 1316–17 (9th Cir. 1993) (holding that because Nevada statute provided that the state's inmates were entitled to the interest on their accounts, the inmates had a property interest in any interest that accrued); *see also Washlefske*, 234 F.3d at 185 (stating that if no right existed at English common law, a state may subsequently create one); *Schneider*, 151 F.3d at 1200–01 (noting same but also commenting that, in doing so, a state may not encroach upon "traditional 'old property' interests"). In this case, however, we conclude Alabama created no such property interest.

So far as inmates of the state are concerned, §§ 14-8-1 to 14-8-10 of the Alabama Code are the only statutory provisions that bear on work release. None of these sections mention interest. The only provision even tangentially related is § 14-8-6, which provides:

> The employer of an inmate involved in work release shall pay the inmate's wages directly to the Department of Corrections. The department may adopt regulations concerning the disbursement of any earnings of the inmates involved in work release. The department is authorized to withhold from an inmate's earnings the cost incident to the inmate's confinement as the department shall deem appropriate and reasonable. *In no event shall the withheld earnings exceed 40 percent of the earnings of the inmate.* After all expenses have been deducted by the department, the remainder of the inmate's earnings shall be credited to his or her account with the

department.  Upon his or her release all moneys being held by the department shall be paid over to the inmate.

Ala. Code § 14-8-6 (emphasis added).  The only property interest this provision could be said to provide an inmate is a limited property interest in the *amount of his wages* that remains after the Department has deducted a portion that is (1) "appropriate and reasonable," and (2) not in excess of 40% of the total *wages* earned.  *See id.*  In short, the Alabama statutes are silent as to what is to become of any interest earned.  Alabama statutory law thus does not vest Givens with a property interest in the interest that accrues on his account.  *See Washlefske*, 234 F.3d at 185 (noting that, where a state statute creates a property right, the right extends only so far as the statute expressly provides).

We next consider whether Alabama regulation or policy vests inmates with a property right in the interest earned on their accounts.  Given that the relevant regulation is silent regarding interest, *see* Dep't of Corrs. Admin. Reg. No. 410 (Sept. 2, 1997), and Department policy provides that inmates are *not* to receive any such interest, Ala. Dep't of Corr. Manual of Accounting Procedures for Insts. and Cmty. Based Facilities, ch. 5, at 26, we conclude that neither regulation nor policy vests Alabama inmates with such a right either.

14

In sum, we conclude Alabama has not created a property interest for its inmates in the interest that accrues on their accounts.

## IV. CONCLUSION

For the foregoing reasons, we conclude that, at common law, Alabama inmates do not have a property interest in the interest that accrues on their accounts. We further conclude Alabama has not created such an interest via statute, regulation, or policy. Accordingly, no recognized property interest is implicated here, and, absent such an interest, there is no "taking."

AFFIRMED.