**Edward Eugene YOUNG, Plaintiff,**

v.

**A.T. WALL, in his capacity as the Director of the Rhode Island Department of Corrections, Defendant.**

No. 03–220S.

United States District Court,
D. Rhode Island.

March 5, 2005.

Edward Eugene Young, Sr., Cranston, RI, pro se.

Andrew B. Prescott, Nixon Peabody LLP, Providence, RI, for Plaintiff.

Rebecca Tedford Partington, Attorney General's Office, Providence, RI, Patricia Anne Coyne–Fague, Department of Corrections, Cranston, RI, for Defendant.

### DECISION AND ORDER

SMITH, District Judge.

Citizens have a protected property interest in the wages that are earned from their labor and the interest that accumulates from those wages. However, prisoners maintain diminished property rights, and therefore diminished ownership rights in earnings from labor performed while confined. In this case, Plaintiff Edward Eugene Young ("Plaintiff" or "Young"), a prisoner at the Adult Correctional Institutions ("ACI"), seeks to hold A.T. Wall ("Defendant" or "Wall"), as the director of the Rhode Island Department of Corrections ("RIDOC"), liable for an unconstitutional "taking" under 42 U.S.C. § 1983.[1] Young alleges, among other things, that RIDOC, and/or the General Treasurer of the State of Rhode Island, appropriate interest that accrues on amounts held in his prison accounts earned for labor he has performed while in prison. In response to Young's Complaint, the Defendant filed a Motion to Dismiss. The matter was referred to Magistrate Judge Jacob Hagopian, who issued a thorough Report and Recommendation ("R & R") recommending dismissal of all claims except Young's claim alleging the Defendant's improper appropriation of interest. This Court agrees with Magistrate Judge Hagopian's recommendation dismissing Counts I–VI. This Court also agrees with the Magistrate Judge's recommendation denying the Motion to Dismiss Young's claim regarding appropriation of interest on prison accounts (Count VII). However, this Court reaches this result for a different reason than the Magistrate Judge, and thus writes separately. After reviewing the applicable case law and noting a split among the circuits, this Court finds that a prisoner does not maintain a constitutionally-protected property right in the interest accrued from wages for paid labor. Therefore, the appropriation of Young's interest earned on wages from paid labor cannot be a taking in violation of the Fifth

---

1. It is unclear exactly whom Young intends to sue. While the Complaint names numerous individuals as defendants, the only party that appears to have been served with a copy of the Complaint is Director Wall. (*See* Def.'s Mot. Dismiss, Doc. No. 16; Pl.'s Am. Compl., Doc. No. 15.) However, Young's Motion for Determination as Class, filed several months after the Complaint, names Wall and "the State of Rhode Island (Paul Tavares, Treasurer, et[ ] al.)" as defendants, and was served upon both Wall *and* Tavares. (Pl.'s Mot. Determ'n Class, Doc. No. 24.) Although the State of Rhode Island has not moved to dismiss the Complaint against Tavares on grounds that he was never served with a copy of the Complaint, this Court dismisses the Complaint against Tavares on these grounds, pursuant to Fed.R.Civ.P. 12(b)(5) ("insufficiency of service of process"). In addition, to the extent that Young seeks to make the State of Rhode Island a defendant in this action, the Complaint against the State is also dismissed because "a State is not a person within the meaning of § 1983," *R.I. Bhd. of Corr. Officers v. R.I.*, 264 F.Supp.2d 87, 91 (D.R.I.2003) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (internal quotations omitted)), and therefore, Young cannot maintain an action against the State under § 1983.

Amendment of the United States Constitution. However, prisoners have a limited property right in such interest which cannot be withdrawn without affording prisoners procedural due process. Accordingly, all of Young's claims are dismissed, except Count VII. In addition, Young's claim for declaratory relief, filed subsequent to the filing of the Complaint and issuance of the R & R, is dismissed without prejudice for lack of jurisdiction.

## I. *Background*

Young is currently a prisoner at the ACI. He was convicted for having sexual intercourse with a twelve-year-old girl, and was sentenced to a term of forty-five years in prison. While confined, Young has worked at the prison providing laundry services and has earned a small amount of wages.

On August 18, 2003, Young filed a sweeping Amended Complaint that asserted a laundry list of seven apparent claims for relief under 42 U.S.C. § 1983. He claims that: (1) he was wrongly confined in segregation for twenty-two days; (2) he was removed from his prison job; (3) he was not permitted to change his cell to a different tier; (4) he was attacked by fifteen inmates sometime between February 9, 1997, and February 19, 1997; (5) he was punched by an unnamed correctional officer on February 24, 2003; (6) he has been asked to participate in sexual activity with other inmates; and (7) RIDOC improperly takes the interest earned on his inmate accounts. With respect to this takings claim, Young alleges that he is required to place twenty-five percent of his earnings

into a "frozen" account. He also maintains funds in a second so-called "open" account.[2] Young alleges that interest accrues on the money in those accounts and that the interest is improperly retained and invested by RIDOC and/or the General Treasurer of the State of Rhode Island and not returned to the prisoners' accounts, as required by RIDOC policy. He claims that the appropriation of the interest by RIDOC amounts to an unconstitutional taking of his private property in violation of the Fifth Amendment of the United States Constitution.

The Defendant filed a Motion to Dismiss all seven claims. The Motion to Dismiss was referred to Magistrate Judge Hagopian pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. The R & R recommends that all of Young's claims be dismissed, except the claim alleging that the Defendant improperly "takes" the interest earned on Young's prison accounts in violation of the Fifth Amendment.

Although no objection to the R & R was filed in the present case, this Court maintains the authority to adopt or reject the recommendations of the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R.Civ.P. 72(b), which provide that a district judge "may accept, reject, or modify," in whole or in part, the findings or recommendations made by the magistrate judge.

Following the issuance of Magistrate Judge Hagopian's R & R preserving the takings claim, Young, together with six other ACI prisoners and former prisoners, filed a Motion for Determination as Class, requesting that this Court certify their suit

2. R.I. Gen. Laws § 42–56–22 provides, in relevant part, that "there shall be maintained on account at all times at least twenty-five percent (25%) of the earnings of each prisoner ... up to a maximum of five hundred dollars ($500) ...; those funds to be turned over to the prisoner at the time of his or her release

from the institution." As noted by Young, the "frozen" account differs from the "open" account in that funds held in the former account "cannot be withdrawn, converted, or deposited elsewhere," until the prisoner is released from the ACI. (Pl.'s Mot. Determ'n Class, Doc. No. 24, at 1.)

as a class action.[3] Young also filed a Motion requesting declaratory relief for the Defendant's alleged failure to provide certain articles of clothing free of charge in violation of state law, which the Defendant has recently moved to dismiss.

## II. Standard of Review

Fed.R.Civ.P. 12(b)(6) provides that a party is entitled to the dismissal of actions that fail to state a claim upon which relief can be granted. In considering a motion to dismiss brought pursuant to Rule 12(b)(6), the court must accept the well-pleaded averments of the plaintiff's complaint as true, and view these facts in the light most favorable to the plaintiff. *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir.1987). A motion to dismiss under Rule 12(b)(6) will only be granted when it "appears beyond doubt that the plaintiff can prove no set of facts ... which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. Analysis

### A. Takings Claim

Young brought suit under 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to maintain an action under § 1983, the conduct of which Young complains must be committed by a person acting under the color of state law and the conduct must have deprived him of a federal or state constitutional right. *See Evans v. Avery*, 100 F.3d 1033, 1036 (1st Cir.1996).

Young alleges that the Defendant violated his rights by "skim[ming] the interest payments" accruing to him from the principal held in his accounts, in violation of RIDOC Policy and Procedure 2.17–2 (the "Inmate Accounts Policy"). (Pl.'s Mot. Determ'n Class, Doc. No. 24, at 3.) The Inmate Accounts Policy states, in relevant part:

Return of investment earned on monies in the Inmate Account Fund accrues to the depositing inmates in an equitable fashion.... All inmate funds under the control of the RIDOC are kept in a custodial account with the Rhode Island General Treasurer. The Rhode Island General Treasurer prudently invests these funds. On a quarterly basis, the General Treasurer issues a return of investment on the custodial funds. The return of investment is distributed equitably to all inmate accounts that were active in the system on the day the return of investment was posted via a computer program.

As RIDOC's Director, Wall is statutorily responsible for the management of the Rhode Island prison system, *see* R.I. Gen. Laws § 42–56–10(5) (stating that Director of RIDOC shall "[m]anage, direct and supervise the operations of the department"), and is therefore clearly a state actor for purposes of § 1983.

---

**3.** Because this Court declines to dismiss the Plaintiff's claim regarding the Defendant's improper appropriation of interest, this Court reserves judgment on the Plaintiff's Motion for Determination as Class. Accordingly, the Defendant shall have until April 6, 2005, to file an objection to the Plaintiff's Motion.

The "Takings Clause" of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.[4] "[T]o state a Takings claim ... a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected. Only if the plaintiff actually possesses such an interest will a reviewing court then determine whether the deprivation or reduction of that interest constitutes a 'taking.'" *Givens v. Ala. Dep't of Corr.*, 381 F.3d 1064, 1066 (11th Cir.2004) (citations omitted); *see Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 973 (1st Cir.1993).

The Fifth Amendment protects property interests; it does not create them. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Therefore, in order to ascertain the nature and extent of the protected property interest at issue, this Court must look outside the Takings Clause to "rules or understandings that stem from an independent source," such as common law and state law. *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. While a state may create and define property rights, the Takings Clause limits a state's ability to redefine core property rights thereby sidestepping the Takings Clause. *See Webb's Fabulous Pharm., Inc. v. Beckwith*, 449 U.S. 155, 164, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Thus, as noted by the Supreme Court in *Webb's*, "a

State, by *ipse dixit*, may not transform private property into public property without compensation." *Id.*

1. *To What Extent Do Prisoners Have a Property Right to Wages at Common Law and/or Under Rhode Island Law?*

At common law, prisoners did not maintain the same protected property rights in their wages, and any interest accrued thereon, as private citizens. *Givens*, 381 F.3d at 1068 (citing 1 William Blackstone, Commentaries *299 ("If ... a member of any national community violates the fundamental contract of his association, by transgressing the municipal law, he forfeits his right to such privileges as he claims by that contract....")); *Washlefske v. Winston*, 234 F.3d 179, 185 (4th Cir. 2000) ("At common law a convicted felon not only did not have a property right in the product of his work in prison, but he also forfeited all rights to personal property.").

■ While prisoners have no common law property right to wages for their work, a state may create a property right by statute, regulation, or policy. *Givens*, 381 F.3d at 1069. In Rhode Island, prisoners are required, pursuant to R.I. Gen. Laws § 42–56–21,[5] to labor for the benefit of the state at the direction of RIDOC as part of their confinement, for which they are paid not more than three dollars per day, or they may be contracted out to private employers.[6]

---

4. The Fifth Amendment has been extended to the States through the Fourteenth Amendment. *See Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

5. Section 42–56–21 provides that prisoners shall be "kept at labor ... for the benefit of the state ... subject to any rules, regulations, and discipline [of] the director."

6. While a prisoner may, upon approval of the director, "be permitted to work at paid employment for his or her own benefit," R.I. Gen. Laws § 42–56–21, for example, through work release, the statute explicitly forecloses this option for prisoners convicted of "a sex offense involving minors." It is clear from the Complaint that Young was convicted of a sex offense involving a minor, and therefore, this avenue, even without the discretionary

■ The purpose of prison labor is rehabilitative in nature. *R.I. Council 94, Afscme, Afl–Cio v. State,* 714 A.2d 584, 591 (R.I.1998). The rehabilitative policy underlying work assignments is set forth as well in the regulations of RIDOC, which, among other things, seeks "to provide inmates with a wide range of work assignments that afford an opportunity to learn job skills and develop good work habits and attitudes that can be applied to jobs after release." R.I.Code R. 06–060–008 ("Department of Corrections Philosophy, Goals and Objectives").

Thus, under Rhode Island law, the payment of prisoners for their labor—whether for the state, or for an outside entity—is purely discretionary on the part of the state. *See Anderson v. Salant,* 38 R.I. 463, 96 A. 425, 432 (1916). A prisoner's earnings

> are not wages in a realistic economic employer-employee relationship. They are, rather, a gratuitous payment authorized by the [state] and made by virtue of an administrative policy promoted and advanced in the best interests of penology and sociology. The plaintiff has no inherent legal right to the payment of this gratuity, nor to determine its form or amount.

*Gray v. Lee,* 486 F.Supp. 41, 46 (D.Md. 1980) (quoting *Harris v. Yeager,* 291 F.Supp. 1015, 1017 (D.N.J.1968) (internal quotations omitted), *aff'd,* 410 F.2d 1376 (3d Cir.1969)), *aff'd,* 661 F.2d 921 (4th Cir.1981). The state could at any time terminate the prisoner's employment, leaving him without income or recourse for violation of a contract.

■ While there is no common law or even statutory right to be paid for labor

performed as a prisoner, it is possible for the state to create a limited protected interest in wages it chooses to pay such prisoners.[7] In relevant part, § 42–56–22 provides that:

> Every person who shall be committed to the adult correctional institutions to answer for any criminal offense, whether convicted or awaiting trial ... may be permitted to labor in the discretion of the director ... for the state, and in that case may be paid not more than three dollars ($3.00) a day for every day he or she shall labor with the express consent of the director, ... to be credited to the prisoner's account by the assistant director of administration, ... and to be disbursed to the prisoner in accordance with the rules and regulations of the institutions; provided, further, however, there shall be maintained on account at all times at least twenty-five percent (25%) of the earnings of each prisoner up to a maximum of ... five hundred dollars ($500) ...; those funds to be turned over to the prisoner at the time of his or her release from the institution, *the funds being his or her property;* the moneys to be paid to the prisoner by order of the assistant director of management services upon the general treasurer.

*Id.* (emphasis added).

■ While § 42–56–22 appears to create a property right to funds (at least those maintained in a prisoner's "frozen" account), the right created is at best "a limited property right, defined by the terms of the statute, which do[es] not give [the prisoner] full rights of 'possession, control, and disposition' over the amounts 'earned' and credited to his accounts."

language requiring approval of the director, would not be available to him.

**7.** Young makes this argument in one of his filings, *see* Pl.'s Mot. Determ'n Class, Doc. No. 24, at 4.

*Washlefske,* 234 F.3d at 185 (quoting *Phillips,* 524 U.S. at 170, 118 S.Ct. 1925); *see R.I. Bhd. of Corr. Officers,* 264 F.Supp.2d at 102 ("Although property rights are ordinarily created by state law, federal constitutional law determines whether the alleged interest created by the State rises to the level of 'property,' thereby securing the protections of the Fifth and Fourteenth Amendments."). Significantly, § 42–56–22, like § 42–56–21, vests Wall with total discretion over whether Young may work at all, by making the labor of prisoners subject to the "discretion of the director" and contingent upon receipt of the "express consent of the director." Such discretion evidences a lack of intent to provide prisoners with a protected property interest. *See, e.g., Jennings v. Lombardi,* 70 F.3d 994, 996 (8th Cir.1995) (reasoning that "[w]here the statute or policy ... grants to the decisionmaker discretionary authority in implementing it, a protected property interest is not created"); *cf. Bishop v. State,* 667 A.2d 275, 277–78 (R.I. 1995) (holding that prisoner had no constitutionally-protected liberty interest in prison-inmate classification system process, where director of Department of Corrections retained "unfettered discretion" in classification and housing of prisoners). Moreover, under Rhode Island law, a prisoner's earnings, and the interest accruing thereon, are under the control of RIDOC, which directs how prisoners are to be paid, how prisoners may spend their earnings, how their earnings are to be invested, and how the interest is to be distributed.[8] *Cf. Keenan v. Vose,* 634 A.2d 866, 868 (R.I. 1993) (reasoning that set-aside account created by § 42–56–22 could not be used at discretion of convicted persons, but rather required "permission to invade the account").

"In so limiting an inmate's interest in the funds generated from prison work and held in prison accounts," Rhode Island law "do[es] not deprive inmates of any preexisting property rights. To the contrary, [it] create[s] limited property rights for penological purposes." *Washlefske,* 234 F.3d at 185. Thus, Young does not have a constitutionally-protected property right in his wages; all he has is "a limited property right in the amounts deposited in [his name]—specifically ... the limited right to access [his] deposits when permitted by statute, regulation, or policy." *Givens,* 381 F.3d at 1067 (discussing *Washlefske,* 234 F.3d at 185–86).

### 2. *Do Prisoners Have Property Rights in Interest Under the "Interest Follows Principal" Rule?*

Young relies on the common law maxim that "interest follows principal" in claiming a property right in the interest earned on his funds. In *Phillips,* the Supreme Court held that the interest earned on client funds held in Texas's Interest on

---

**8.** Section 42–56–22, for instance, does not entitle prisoners to be paid in cash, but rather provides that such wages are "to be credited to the prisoner's account ... and to be disbursed to the prisoner in accordance with the rules and regulations of the [adult correctional] institutions," or, in the case of a prisoner's "frozen" account, "turned over to the prisoner at the time of his or her release from the institution." In addition, RIDOC regulations and policy allow prisoners to withdraw money from their prison accounts only for certain specified reasons, such as commissary purchases or bail money (R.I.Code R. 06–070–006; RIDOC Policy and Procedure 2.17–2), and in most cases, only after receiving prior authorization (R.I.Code R. 06–070–006; RIDOC Policy and Procedure 2.17–2). Furthermore, under the Inmate Accounts Policy, prisoners must relinquish control over the funds in their prisoner accounts to the General Treasurer, who keeps all prisoner funds in a custodial account, "prudently" invests these funds, and distributes the return on investment to the depositing prisoners in an equitable fashion.

Lawyers Trust Account ("IOLTA") program was the private property of the client because the interest followed the principal and the principal was the private property of the client. 524 U.S. at 173, 118 S.Ct. 1925. This Court agrees that, as a general proposition, interest does indeed follow principal. *See id.* at 165, 118 S.Ct. 1925 ("interest shall follow the principal, as the shadow the body") (quoting *Beckford v. Tobin,* 27 Eng. Rep. 1049, 1051 (Ch. 1749) (internal quotations omitted)). Thus, in the case of the ordinary citizen, the interest earned on wages placed in a bank account is undoubtedly the property of the citizen who performed the labor. But prisoners are not ordinary citizens.[9]

■ As the Magistrate Judge noted, there is a split in the circuits as to whether the interest generated from the investment of prisoner wages constitutes private property for purposes of the Takings Clause. *Compare Givens,* 381 F.3d at 1070 (holding that because prisoner did not have private property interest in his prison accounts, there could be no unconstitutional taking), *and Washlefske,* 234 F.3d at 186 (same), *with Schneider v. Calif. Dep't of Corrs.,* 151 F.3d 1194, 1201 (9th Cir.1998) (holding that prisoners possess constitutionally cognizable property right that implicates Takings Clause scrutiny in any

interest earned from paid labor). In *Washlefske,* the Fourth Circuit found that while interest follows principal, "a prisoner does not enjoy the same common law property rights in his prison accounts as did the *Phillips* 'plaintiffs in their attorney trust accounts.' " 234 F.3d at 184. However, in *Schneider,* the Ninth Circuit held that the taking of any interest accruing to the prisoners' accounts implicated the Takings Clause because interest follows principal. *See Schneider,* 151 F.3d at 1200. The Magistrate Judge relied on the reasoning set forth in *Schneider (see* R & R at 6); however, for the reasons outlined previously, this Court believes the reasoning of *Washlefske* and *Givens* is more applicable to the facts of this case and therefore more persuasive than *Schneider.* The former decisions are premised on the determination that one must first have ownership of the principal in order to assert a claim for taking of the interest. *See Washlefske,* 234 F.3d at 186 (stating that while the *Schneider* court correctly applied rule that interest follows principal, it "never determined who 'owned' the principal and to what extent"). Therefore, because prisoners in Rhode Island cannot claim full rights to their wages (the principal) under common law, and because Rhode Island law gives prisoners, at most, only a limited property interest in their wages,[10] it must

---

**9.** Young argues that if he were not a prisoner "under the [Defendant's] control," the Defendant's taking of interest would not "even be conceivable.... It would be deemed fraud." (Pl.'s Mot. Determ'n Class, Doc. No. 24, at 4.) Of course, this is like saying his incarceration violates his right to interstate travel, because were he not locked up he could go where he pleases. This Court has rejected just such a claim on behalf of a probationer. *See Pelland v. State of Rhode Island,* 317 F.Supp.2d 86, 95 (D.R.I.2004). As a prisoner, Young's "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," including property rights—"a retraction justified by the considerations underlying our penal system." *Bishop,* 667 A.2d at

278 (quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948) (internal quotations omitted), *overruled on other grounds by McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).

**10.** Young would argue that because § 42–56–22 specifically refers to prisoners' funds as "property," and because the Inmate Accounts Policy explicitly provides for the accrual of interest to prisoners, this case is analogous to *Tellis v. Godinez,* 5 F.3d 1314 (9th Cir.1993), in which the Ninth Circuit held that a state statute mandating that interest earned on prison accounts be credited to prisoners created a protected property interest. *See id.* at

follow that such prisoners have no constitutionally-protected property right in the interest earned thereon under the "interest follows principal" rule.[11]  *See id.*

### 3. The Prisoner's Procedural Due Process Rights in the Deprivation of Interest

While the Defendant's alleged failure to pay interest to Young did not deprive Young of a constitutionally-protected property right in violation of the Fifth Amendment, this does not mean that the Defendant's actions were constitutional. On the contrary, viewing the facts in the light most favorable to Young, it is quite possible that the Defendant's failure to distribute interest in accordance with the Inmate Accounts Policy violated Young's right to procedural due process under the Fourteenth Amendment. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Therefore, even where the right deprived is a limited right defined by statute, which "do[es] not fall within traditional common-law concepts of property," procedural due process is still required. *Goldberg v. Kelly*, 397 U.S. 254, 261–62 & n. 8, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *see also Washlefske*, 234 F.3d at 184. Thus, in light of the liberal pleading standard for pro se plaintiffs,[12] this Court finds that Young's Complaint states a claim for the violation of the right to procedural due process.[13]

### B. Declaratory Judgment Claim

On March 15, 2004, several months after filing his Complaint, Young filed a Motion requesting declaratory relief for alleged violations of state law. (Pl.'s Mem. Supp. Declar. Relief, Doc. No. 28, at 1.) Specifically, Young contends that the Defendant's policy denying the issuance of certain articles of clothing (e.g., underclothing, thermal tops and bottoms, socks, hats, gloves and boots) to all but newly

---

1317. However, because the protected property right in *Tellis* was conferred by statute, not by policy of the state department of corrections, and because the Ninth Circuit did not analyze the extent to which prisoners "owned" the underlying principal, this Court finds *Tellis* distinguishable.

11. Although the Inmate Accounts Policy provides for the investment of prisoners' funds and the equitable distribution of interest to prisoners by the General Treasurer, this Policy does not, itself, create a constitutionally-protected property right in interest. To hold otherwise would require this Court to recognize a constitutionally-protected property right to interest accruing on prisoners' wages, where only a limited property right to those underlying wages exists under Rhode Island law (and where no right exists at common law). This would be non-sensical. If the Inmate Accounts Policy creates any property right in interest at all, it is a limited one, subject to the power vested in the General Treasurer over prisoners' funds.

12. While Young recently secured representation in this action (*see* Entry of Appearance, 4/2/04, Doc. No. 31), Young was unrepresented at the time he filed his Complaint.

13. In denying the Defendant's Motion to Dismiss in part, this Court is merely saying that under Rhode Island law, Young has a limited right to the interest on his funds, and that Young has made out a claim that this interest is not being disbursed by the Defendant as required by RIDOC policy. This Court takes no position on the underlying merits of this claim. Thus, it remains to be seen whether such interest was, in fact, appropriated by the Defendant (*see* Pl.'s Mot. Repayment Fees, Doc. No. 18 (Young's "Inmate Account History" for the year 2002, showing only one quarterly distribution of interest)), and if so, "what process the [Defendant] provided, and whether it was constitutionally adequate," *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

committed prisoners violates R.I. Gen. Laws § 42–56–1(a)(1), which provides that "[t]he state has a basic obligation to protect the public by providing institutional confinement and care of offenders. . . ." (Pl.'s Mem. Supp. Declar. Relief, Doc. No. 28 at 2–3; Mem. from C.O.'s to All Inmates and Staff, Doc. No. 28, at 1.) This Court treats Young's Motion as a motion to amend the Complaint to add a claim for declaratory relief. Assuming, without deciding, that such an amendment is permissible under the liberal pleading standard set forth in Fed.R.Civ.P. 15(a), this Court finds that Young's claim fails for lack of jurisdiction. Where an action involves both federal and state claims, "it is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts," *Colon Rodriguez v. Lopez Bonilla*, 344 F.Supp.2d 333, 344 (D.Puerto Rico 2004), such that "the entire action before the court comprises but one constitutional 'case,'" *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Here, however, as noted by the Defendant, Young's federal due process claim and his state claim for declaratory relief derive from very different sets of facts and implicate the violation of two completely unrelated RIDOC policies. (Def.'s Mot. Dismiss, Doc. No. 29, at 2.) Because these claims do not constitute "one constitutional case," this Court declines to exercise jurisdiction over Young's claim for declaratory relief based on violations of state law, and dismisses this state law claim without prejudice.

IV. *Conclusion*

For the foregoing reasons, this Court concludes that while the Plaintiff has no constitutionally-protected property interest in the interest that accrues on his prison accounts, he has a limited property right in such interest which cannot be withdrawn without affording him procedural due process under the Fourteenth Amendment. Accordingly, the Defendant's Motion to Dismiss is hereby GRANTED with respect to all of the Plaintiff's claims, except the claim alleging that the Defendant improperly appropriated interest earned on the Plaintiff's prison accounts in violation of the Due Process Clause, as to which the Defendant's Motion to Dismiss is DENIED. Additionally, the Defendant's Motion to Dismiss the Plaintiff's request for declaratory relief is GRANTED without prejudice.

IT IS SO ORDERED.