# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James A. Paluch, Jr., : 
:
Petitioner :
:
v. : No. 364 M.D. 2016
: Submitted: April 21, 2017
PA Department of Corrections, :
SCI-Albion, Nancy Giroux, Tammy :
Turner, Valarie Kusiak, Lisa Sherretts, :
Terri Bortles, Patrick McElhinny, Karen :
McMillen, Robin Naas, Sandra Gorniak, :
Patrick Brady, Anthony S. Pinko, Earl :
Jones, John Doe Officer #1 and John :
Doe Officer #2, :
:
Respondents :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  November 28, 2017**


James A. Paluch, Jr. (Petitioner), filed a petition for review[1] in this

Court's original jurisdiction alleging a series of common law tort, constitutional, and

---

[1] Petitioner originally filed a complaint in the Court of Common Pleas of Erie County.  By June 8, 2016 motion, Petitioner requested that his complaint be transferred to the original jurisdiction of this Court, which was accomplished by a June 10, 2016 order of the Court of Common Pleas of Erie County.  *See* 42 Pa. C.S. §§ 761, 5103.  Upon transfer to this Court, the pleading initiating Petitioner's cause of action is docketed as a "petition for review" rather than a "complaint."  *See* Pa. R.A.P. 1502, 1513(d).  Petitioner filed preliminary objections to Respondents' preliminary objections requesting that rather than rule on the demurrer to Petitioner's claims sounding in trespass, this Court transfer the petition for review back to the Court of Common Pleas of Erie County to address these particular claims.  This matter was transferred to this Court because of the

mandamus claims, and naming as respondents the Pennsylvania Department of Corrections, SCI-Albion, Nancy Giroux, Tammy Turner, Valarie Kusiak, Lisa Sherretts, Terri Bortles, Patrick McElhinny, Karen McMillen, Robin Naas, Sandra Gorniak, Patrick Brady, Anthony S. Pinko, Earl Jones, John Doe Officer #1 and John Doe Officer #2 (collectively Respondents).  Petitioner requests, *inter alia*, that this court award punitive and compensatory damages, costs, fees and interest, and that this Court issue: (a) a declaratory judgment, the content of which is specified in paragraph 504(A)(1)-(15) of the petition for review; (b) a preliminary and a permanent injunction; and (c) a legal opinion addressing specific questions of law identified in paragraph 504(c)(1)-(2)[2] of his petition for review.

In response to Petitioner's petition for review, Respondents filed preliminary objections in the nature of a demurrer pursuant to Pennsylvania Rule of

---

equitable relief sought by Petitioner and the fact that the suit is against the Commonwealth government; we find no error in this jurisdictional determination.

[2] The questions identified by Petitioner are as follows:

> 1. Does the Pltf. and other state prisoners similarly situated in the PA DOC who are the prisoner-beneficiaries of an administrative trust fund have the right to vote by a fair election process a body of prisoners to represent their best interests with regards to the planning and budgeting of [Inmate General Welfare Fund (IGWF)] monies which includes the approval and disapproval of IGWF business transactions and other related expenditures at each PA DOC facility and at the PA DOC Central Office ?;
> and,
> 2. Does the Pltf. and other state prisoners similarly-situated have the right as prisoner-beneficiaries of the IGWF as to how their private monies should be collected, planned, budgeted, dispersed, spent and otherwise disposed of?

(Petition for Review, ¶¶504(C)(1)-(2).)

2

Civil Procedure No. 1028(4).[3] Respondents also argue that it is clear from the face of the petition for review that the majority of Petitioner's claims are barred by the doctrine of sovereign immunity. Respondents' preliminary objections separate Petitioner's claims into two categories: first, Respondents identify counts (i)-(xii) as claims challenging spending and purchasing decisions made with funds contained in the Inmate General Welfare Fund (IGWF) by employees of the Pennsylvania Department of Corrections (DOC); next, Respondents identify counts (xiii)-(xvi) as claims related to Petitioner's personal property.[4]

## I.   IGWF Claims

Petitioner asserts eleven common law tort claims arising from allegations regarding the IGWF. Respondents argue that Petitioner has failed to state valid claims for relief because Petitioner's claims rely upon DOC's Fiscal Administration Policy (FAP) creating mandatory duties that are enforceable by Petitioner and similarly situated prisoners, rely upon erroneous legal interpretations of trust and property law, and are barred by the doctrine of Sovereign Immunity.[5] We agree.

---

[3] In ruling on a demurrer, this Court must accept as true all well-pleaded allegations of material facts in the petition for review, as well as all of the inferences reasonably deducible from those facts. *Black v. Pennsylvania Department of Corrections*, 889 A.2d 672, 675 n.5 (Pa. Cmwlth. 2005). However, our standard does not require this Court to accept as true conclusions of law, unwarranted factual inferences, argumentative allegations, or expressions of opinion. *Dodgson v. Pennsylvania Department of Corrections*, 922 A.2d 1023, 1027-28 (Pa. Cmwlth. 2007).

[4] The Petition for Review filed by Petitioner includes the following sixteen counts: (i) breach of fiduciary duties; (ii) breach of trust; (iii) conversion; (iv) failure to disclose; (v-viii) misappropriation of funds; (ix) violation of due process; (x) intentional misrepresentation; (xi) theft by deception; (xii) unjust enrichment; (xiii) negligent destruction of property; (xiv) lack of notice; (xv) violation of the takings clause; and (xvi) mandamus.

[5] Immunity is an affirmative defense that ordinarily must be pled as a new matter. Pa. R.C.P. 1030. An exception to this rule exists where it is apparent from the face of the complaint that immunity acts as a bar to the cause or causes of action. *Feldman v. Hoffman, M.D.*, 107 A.3d 821, 829 (Pa.

a. FAP

The allegations underlying Petitioner's IGWF claims center on Respondents' use of the interest and investment income held in the IGWF to purchase items for State Correctional Institution-Albion (SCI-Albion), including a new scoreboard for the gymnasium, stainless steel security furniture to replace existing wooden furniture, and seeds and materials for the SCI-Albion Greenhouse Project. (Petition for Review, ¶¶67-89.) Petitioner also alleges that Respondents squandered IGWF monies by purchasing items at grossly inflated prices. (*Id*. ¶¶66, 78-84.) In addition to Petitioner's allegations surrounding the use of IGWF funds, Petitioner challenges the manner in which the IGWF is funded, alleging that it is funded by services provided to prisoners at inflated prices, taxes or levies placed by DOC on the sale of items to prisoners, and interest earned on the principal in prisoner's DOC accounts. (*Id*. ¶¶45, 73, 205.) Petitioner further contends that he and similarly situated prisoners are entitled to determine how the IGWF is funded and how the monies within the fund are spent, which necessarily includes the right to inspect IGWF records and related documents. (*Id*. ¶¶203-212.)

Pennsylvania statutory law mandates that DOC maintain an account for all prisoners. Sections 3124, 3125, and 5904 of the Prisons and Parole Code, 61 Pa. C.S. §§ 3124-3125, 5904. The FAP adopted by DOC to implement this statutory requirement both establishes and governs the administration and use of the IGWF. Pursuant to DOC's FAP, the principal from a prisoner's personal account is held in a central fund, the IGWF, and invested by the IGWF Council along with sales from

Cmwlth. 2014) (where petitioner fails to object by preliminary objection to respondent raising immunity by preliminary objection and the issue is apparent from the face of the complaint, the matter may be decided upon review of preliminary objections); *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014).

4

commissary, hobby craft functions, and personal services available to facility employees, as well as donations from individuals or organizations for the benefit of prisoners. FAP 3.1.1, § IV, ¶K. Although the principal in a prisoner's account remains the individual prisoner's property, the investment income from the IGWF does not accrue to any individual prisoner and instead, pursuant to the FAP, "is used solely for the benefit of inmates of the [DOC] facilities." *Id.*[6] The FAP adopted by DOC also specifies the responsibilities of each facility utilizing the IGWF, including that the facility:

> Establish inmate input into operation of the fund at each facility. This shall be accomplished by the use of a committee consisting of staff and inmate representatives who shall be used in planning IGWF activities. They shall also be responsible for posting a monthly statement of fund activities on all inmate bulletin boards for the respective facility[.]

FAP 3.1.1, § IV, ¶K(6)(g). The FAP does not provide prisoner IGWF representatives at each facility with authority to approve, veto, or vote on how the IGWF monies are spent, rather the FAP mandates that each facility establish a committee consisting of staff and prisoner representatives to ensure "inmate input." *Id.* The FAP, however, is not statutory or constitutional law; the detailed regulations set forth in the FAP concerning the responsibilities a facility has in operating the IGWF cannot form the basis of a cause of action because allegations that DOC has

---

[6] The accounting policy adopted by DOC provides that a prisoner may "open a savings account with a bank in the community if you wish to earn interest," *see* Inmate Handbook (2017 ed.) § I, ¶A(1), but does not permit a prisoner to "use a checking account that was opened prior to your incarceration or open a checking account while you are incarcerated." *Id*. at ¶A(7)(f); *see also Hill v. Department of Corrections*, 64 A.3d 1159, 1165 n.3 (courts may take judicial notice of DOC's policies and handbooks, which appear on DOC's official website).

failed to adhere to its own policies and regulations do not state a claim for relief. *Shore v. Department of Corrections*, 168 A.3d 374, 386 (Pa Cmwlth. 2017); *Tindell v. Department of Corrections*, 87 A.3d 1029, 1035 (Pa. Cmwlth. 2014); *Yount v. Department of Corrections*, 886 A.2d 1163, 1169 (Pa. Cmwlth. 2005); *Weaver v. Department of Corrections*, 829 A.2d 750, 752 (Pa. Cmwlth. 2003); *Bullock v. Horn*, 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998). Moreover, in an effort to dispel any notion that the FAP is enforceable by Petitioner and other similarly situated prisoners, the FAP explicitly states, "[t]his policy does not create rights in any person." FAP 3.1.1 § VI.

Accordingly, Petitioner's claims in counts I-XII do not state a cause of action and must be dismissed because these claims allege that Respondents failed to adhere to the FAP.

### b. Sovereign Immunity

In addition, even if Petitioner's reliance on the FAP did not prevent him from stating a claim upon which relief may be granted, it is clear from the face of the petition for review that the doctrine of sovereign immunity bars Petitioner's tort claims. Sovereign immunity acts as a bar to suits against Commonwealth parties, including its officials and employees acting within the scope of their duties. 1 Pa. C.S. § 2310. Establishing a limited list of exceptions to immunity, the General Assembly adopted what is commonly referred to as the Sovereign Immunity Act, 42 Pa. C.S. §§ 8501-8502, 8521-8527. Section 8522 of the Sovereign Immunity Act waives "immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity," for specifically

6

enumerated categories of acts. 42 Pa. C.S. § 8522. A "Commonwealth party" is defined in Section 8501 as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa. C.S. § 8501. Thus, when an employee of a Commonwealth agency, such as a DOC employee, is acting within the scope of his or her duties, the employee is shielded by the doctrine of sovereign immunity from liability for tort claims arising from negligent acts that do not fall within the statutory exceptions listed in Section 8522(b) of the Sovereign Immunity Act. 1 Pa. C.S. § 2310; 42 Pa. C.S. § 8522(a)-(b). Sovereign immunity is not waived for intentional acts committed by a Commonwealth employee acting within the scope of his or her employment. *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992).

Each of the state law IGWF claims that Petitioner asserts in his petition for review are either intentional torts or they do not fall within the exceptions in Section 8522 of the Sovereign Immunity Act that would permit Petitioner to maintain a suit against Respondents. 42 Pa. C.S. § 8522(b). For example, in Count I of his petition for review, Petitioner alleges a breach of fiduciary duty. Setting aside the legal conclusions underlying much of Petitioner's allegations, such as Petitioner's assertion that he and similarly situated prisoners are "beneficiaries" and Respondents are "trustees" of the IGWF, Petitioner would still fail to state a claim for relief because the Commonwealth has not waived its immunity for claims alleging a breach of fiduciary duty. *Id*.; *compare Doe v. Franklin County*, 139 A.3d 296, 318 (Pa. Cmwlth. 2016) (holding that what is commonly known as the Tort Claims Act, 42 Pa. C.S. §§ 8541-8564, bars the common law tort claim breach of fiduciary duty).[7] Likewise, in each count where Petitioner is attempting to allege an

---

[7] *See Jones v. Southeastern Pennsylvania Transportation Authority*, 772 A.2d 435, 440 (Pa. 2001) ("the legislature's intent in both the Sovereign Immunity and Tort Claims Acts is to shield

7

intentional tort, such as Count VI where he alleges that a subset of Respondents misappropriated IGWF monies to purchase standard security furniture for SCI-Albion, Petitioner fails to allege that this subset of Respondents acted outside the scope of their duties. (*See* PFR, ¶¶ 286-293.) As a result, it is clear from the face of the petition for review that Respondents are immune from suit for breach of fiduciary duties (Count I), breach of trust (Count II), conversion (Count III), failure to disclose (Count IV), misappropriation of funds (Count V-VIII), intentional misrepresentation (Count X), theft by deception (Count XI), and unjust enrichment (Count XII).

### c. Constitutional Claims

Petitioner also asserts that the interest accrued on the principal in his DOC account was taken by Respondents in derogation of his Fifth and Fourteenth Amendment rights to due process and to be free of a government taking of his property for public use. A procedural due process claim requires the petitioner to have an interest that falls within the scope of "life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). A claim under the takings clause of the Fifth Amendment requires the petitioner to demonstrate that he has a constitutionally protected property interest. *Penn Central Transportation Co. v. New York*, 438 U.S. 104, 125 (1978). The United States Constitution does not create property interests; rather, an independent source such as state statutory law creates and defines the property interests protected by the constitution. *Board of Regents of State College v. Roth*, 408 U.S. 564, 577 (1972). In Pennsylvania, the account DOC maintains for Petitioner is a creature of statute. Sections 3124, 3125, and 5904 of the Prisons and Parole Code, 61 Pa. C.S. §§ 3124-3125, 5904. By virtue of statute, prisoners are

---

government from liability, except as provided for in the statutes themselves, we apply a rule of strict construction in interpreting these exceptions. Moreover, as the immunity statutes deal with the same subject matter, we read them consistently" (internal citations omitted).)

8

credited an amount determined by DOC as wages for time engaged in work, prisoners are permitted to draw upon any positive balance to provide for present needs, and DOC may deduct assessments and court ordered costs. *Id*. Petitioner has a property interest in the principal contained in his DOC account; therefore, he is entitled to due process with respect to any deprivation of that principal. *Buck v. Beard*, 879 A.2d 157, 160 (Pa. 2005); *see also Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996), *cert. denied*, 519 U.S. 1061 (1997). However, there is no Pennsylvania statute mandating that Petitioner receive interest or investment income from the principal held in his DOC account.

Recognizing the absence of a statutorily derived property interest, Petitioner contends that his property interest derives from the common law rule that "interest follows principal." *See Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998) (*citing Beckford v. Tobin*, 27 Eng. Rep. 1049, 1051 (Ch. 1749) ("[I]nterest shall follow the principal, as the shadow the body")). In support of his argument that he has a property interest in any interest or income earned on the principal in his DOC account, Petitioner relies upon the Ninth Circuit Court of Appeals holding in *Schneider v. California Department of Corrections*, 151 F.3d 1194 (9th Cir. 1998). In *Schneider*, the Ninth Circuit Court of Appeals held that California prisoners "possess a constitutionally cognizable property interest," in the income earned on their prison accounts, "that triggers Takings Clause scrutiny." *Id*. at 1201. The reasoning in *Schneider* is persuasive; however, it leads us to a contrary holding.

In *Schneider*, the Ninth Circuit Court of Appeals reasoned that:

> The States' power vis-a-vis property thus operates as a one-way ratchet of sorts: States may, under certain

9

circumstances, confer "new property" status on interests located outside the core of constitutionally protected property, but they may not encroach upon traditional "old property" interests found within the core.

*Id*. at 1201. The court concluded that the common law rule interest follows the principal created a traditional property interest that fell within the core of constitutional protection and that, therefore, could not be rescinded by state statute. *Id*. The court relied upon *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), which held that despite a state statute to the contrary, counties must return to the owner of the principal interest accrued on an interpleader fund deposited with a county court, and *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998), which held that despite a state statute providing for the interest to be used to fund indigent legal services, clients retained a protected property interest in interest accrued on their funds held in an Interest on Lawyers Trust Account (commonly known as an IOLTA). In both *Webb's* and *Phillips*, the independent source for the constitutionally protected property interest triggering the scrutiny of the Takings Clause was the common law principle that interest follows the principal. However, as persuaded as we are by the reasoning employed by the court in *Schneider*, we conclude that its reliance on the common law principle at work in *Webb's* and *Phillips* was mistaken. We reach this conclusion because at common law, prisoners had no personal property rights.[8]

---

[8] *See* 1 William Blackstone, *Commentaries* *299 ("[A]ll property is derived from society, being one of those civil rights which are conferred upon individuals, in exchange for that degree of natural freedom which every man must sacrifice when he enters into social communities. If therefore a member of any national community violates the fundamental contract of his association, by transgressing the municipal law, he forfeits his right to such privileges as he claims by that contract; and the state may very justly resume that portion of property, or any part of it, which the laws have before assigned him."); 4 *Id*. *385 (discussing forfeiture by a convicted felon);

10

In *Washlefske v. Winston*, 234 F.3d 179 (4th Cir. 2000), the Fourth Circuit Court of Appeals reached the same conclusion. Relying on the reasoning employed by the Ninth Circuit Court of Appeals in *Schneider*—that states may create property interests by statute but may not encroach upon pre-existing common law property interests—the Fourth Circuit Court of Appeals held the petitioner:

> Never had a private property interest in these accounts as defined by common law, but only an interest defined by statute—a statute that gives him limited rights to those funds—he cannot claim that a property interest based on traditional principles of property law was taken. His property interest was that given by statute, and the State never took from him what was created by statute. Therefore, there was not a taking of private property as addressed in the Fifth Amendment.

234 F.3d at 186. The Eleventh Circuit Court of Appeals came to the same conclusion in *Givens v. Alabama Department of Corrections*, 381 F.3d 1064 (11th Cir. 2004), where it held that prisoners in Alabama "do not have a common law property right to the interest that accrues on their accounts," and that because Alabama statutes are silent as to what is to become of any interest earned, statutory law does not vest prisoners with a property interest in the interest that accrues on their account. *Id*. at 1069-1070; *see also Young v. Wall*, 642 F.3d 49, 54 (1st Cir. 2011) (*accord*); *Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992) (*accord*).

---

*see also United States v. Kozminski*, 487 U.S. 931, 943-944 (1988) (requiring inmates to work without pay does not violate the Thirteenth Amendment's prohibition against involuntary servitude); *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682 (1974) (at English common law "a breach of the criminal law was an offense to the King's peace, which was felt to justify denial of the right to own property").

Accordingly, we hold that Petitioner has failed to state a claim under the due process and takings clauses of the Fifth Amendment to the United States Constitution because he has no property interest in the interest and income earned on the principal in his DOC account. The basis of our holding is the conclusion that Petitioner has no common law right to the interest on the principal and the Prisons and Parole Code does not create a statutory right but rather is silent.

## II. Personal Property Claims

In the second set of claims, Petitioner asserts that a subset of Respondents destroyed his property through intentional and negligent acts and violated his due process rights. Petitioner further alleges that Respondents have violated his right under the Fifth and Fourteenth Amendments by arbitrarily taking his personal property. The allegations underlying Petitioner's personal property claims center on the destruction of Petitioner's manual typewriter, his typewriter case, and his footlocker, and damage to Petitioner's headphones. (Petition for Review (PFR), ¶¶95-113.) In addition, Petitioner alleges that Respondents failed to provide him with notice that his personal property was in danger of being destroyed and frustrated his ability to utilize the grievance system; Petitioner contends that while these actions are particular to him, they are also reflective of a pattern and practice adopted by the SCI-Albion Respondents. (*Id.* ¶¶105-109, 226-236.)

In Count XIII of his petition for review, Petitioner asserts that a subset of Respondents acted negligently by failing to advise him of their intent to confiscate his typewriter, typewriter case, and footlocker and to subsequently destroy these items. (PFR, ¶¶346-353.) However, despite Petitioner's use of the term negligent, the allegations set forth in his petition do not state a claim for negligence. In *Williams v. Stickman*, 917 A.2d 915 (Pa. Cmwlth. 2007), this Court held that a

petitioner stated a claim for negligence within the personal property exception to the Sovereign Immunity Act because he stated "a claim for damages to his television set caused by the care of the television set while it was in the possession of Commonwealth parties." *Id*. at 918; *see also* 42 Pa. C.S. § 8522(b)(3). By contrast, in the instant matter Petitioner alleges that his property was intentionally destroyed, a claim which is barred by the doctrine of sovereign immunity. *Williams*, 917 A.2d at 917.

Next, Petitioner alleges in Count XIV of his petition for review that Respondents violated his due process rights because they failed to provide him with written notice and an opportunity to be heard prior to the seizure and subsequent destruction of his property. Petitioner does not allege that he did not have a post-deprivation remedy; Petitioner instead alleges that he should have a pre-deprivation remedy. Petitioner again fails to state a claim upon which relief can be granted. As we stated in *Shore v. Department of Corrections*, 168 A.3d 374 (Pa. Cmwlth. 2017),

> When a prison official confiscates a prisoner's property in an allegedly unauthorized way, whether it be negligently or intentionally, due process requires only the existence of an adequate post-deprivation remedy because it is not feasible for a prison to provide a hearing prior to taking property that is perceived to be contraband or against prison regulations.

*Id*. at 383. Furthermore, we stated that the "courts have repeatedly held that inmate grievance systems are an adequate post-deprivation remedy." *Id*.

Next, Petitioner alleges in Count XV of his petition for review that Respondents' seizure and destruction of his property amounted to a violation of the Takings Clause. Petitioner alleges that he retained a clear right to possess the

13

confiscated personal property under DOC's policies and that he has exhausted the administrative remedies available to him. (PFR, ¶¶108-110.) However, despite Petitioner's focus on the Takings Clause, his allegations state that a subset of Respondents engaged in an "arbitrary taking of his personal property." (PFR, ¶367.) Petitioner's claim is thus a due process claim rather than a claim that his property was taken for public use without payment of just compensation.

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the United States Supreme Court expressed the axiomatic principle that "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Id*. at 546. The Court held in *Bell v. Wolfish* that, *inter alia*, personal property rights of prisoners are "subject to reasonable limitation or retraction in light of the legitimate security concerns of the institution." *Id*. at 554. Relying in part on *Bell v. Wolfish*, the Court went on to hold in *Hudson v. Palmer*, 468 U.S. 517 (1984), that a prisoner does not state a valid due process claim for the deprivation of personal property by prison officials or employees where there exists an adequate post-deprivation remedy. *Id*. at 536. The inmate grievance system is such an adequate post-deprivation remedy.

Finally, in Count XVI of his petition for review, Petitioner alleges that a subset of Respondents have failed to comply with the mandatory language contained in Section 7.2.1 of the DOC handbook regarding timely responses to prisoner communications. We addressed similar allegations in *Weaver*, where we held that the time constraints enacted as a part of DOC's grievance system and policies do not create a right to timely action enforceable by prisoners. 829 A.2d at 752-53.

14

### III. Conclusion

In sum, the preliminary objections in the nature of a demurrer filed by Respondents are granted and Petitioner's petition for review in this Court's original jurisdiction is dismissed.

_____
**JAMES GARDNER COLINS, Senior Judge**

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James A. Paluch, Jr.,                    :
                                         :
                  Petitioner             :
                                         :
         v.                              :  No. 364 M.D. 2016
                                         :
PA Department of Corrections,            :
SCI-Albion, Nancy Giroux, Tammy          :
Turner, Valarie Kusiak, Lisa Sherretts,  :
Terri Bortles, Patrick McElhinny, Karen  :
McMillen, Robin Naas, Sandra Gorniak,    :
Patrick Brady, Anthony S. Pinko, Earl    :
Jones, John Doe Officer #1 and John      :
Doe Officer #2,                          :
                                         :
                  Respondents            :

## ORDER

AND NOW, this 28th day of November, 2017, the preliminary objection in the above-captioned matter of the Pennsylvania Department of Corrections, SCI-Albion, Nancy Giroux, Tammy Turner, Valarie Kusiak, Lisa Sherretts, Terri Bortles, Patrick McElhinny, Karen McMillen, Robin Naas, Sandra Gorniak, Patrick Brady, Anthony S. Pinko, Earl Jones, John Doe Officer #1 and John Doe Officer #2, are GRANTED and the petition for review is DISMISSED.

_____
**JAMES GARDNER COLINS, Senior Judge**