# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rev. Augustus Simmons Enoxh, : 
                  Appellant : 
                    : 
          v. :   No. 243 C.D. 2022
                    :   Submitted: July 21, 2023
J. Carter, T. Pauley, K. Patterson, : 
Mr. Geardner, Librarian, B. Hoffman, : 
T. Stewart, N. Wilson : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: August 25, 2023**

Appellant Rev. Augustus Simmons Enoxh (Appellant)[1] appeals from the Order entered in the Court of Common Pleas of Greene County (trial court) on November 17, 2021, denying him in forma pauperis (IFP) status and dismissing his pro se "Complaint in Civil Action" (Complaint) as frivolous.[2] Appellant filed his Complaint against: J. Carter; T. Pauley; K. Patterson; Mr. Geardner, Librarian (Mr. Geardner); B. Hoffman; T. Stewart; and N. Wilson (collectively, Appellees), individuals employed at various State Correctional Institutions (SCI), namely SCI-

---

[1] Appellant, whose given name appears to be Augustus Simmons, refers to himself as the "Revered Magi Augustus Simmon[s] Enoxh," "the holy protector and founder of the Fellowship of Spiritual Science." (Complaint in Civil Action (Complaint) ¶ 6.)

[2] Appellant's request for IFP status was docketed on November 1, 2021, and was accompanied by his Complaint; however, the Complaint was not docketed until July 17, 2023, when the Prothonotary of this Court requested that the trial court file the Complaint on the docket to enable appellate review of whether the trial court erred in dismissing the Complaint.

Greene, where Appellant was housed when he brought his cause of action,[3] and SCI-Forest and SCI-Coal Township, where Appellant previously had been housed.[4] (Complaint ¶¶ 6-7, 9, 11, 13, 15, 17, 19, 25.) In his Complaint, Appellant makes numerous allegations regarding his inability to receive his Social Security card, his birth certificate, and his inmate identification. He also claims numerous legal documents belonging to him were lost and challenges the prison law library policies at SCI-Greene. (*Id.* ¶¶ 6-20.) Following our review, we affirm in part, reverse in part, and remand for further proceedings.

## I.   BACKGROUND

In his Complaint, Appellant alleges that on April 7, 2021, he filed a grievance against SCI-Greene inmate accounts when his request slip filed on June 12, 2019, for his Social Security card and birth certificate went unanswered. (*Id.* ¶ 21.) Appellant avers he received a response to his grievance that his Social Security card was at SCI-Greene, but his birth certificate was not. (*Id.* ¶ 22.) Appellant then filed a second request slip on June 17, 2018,[5] asking for two copies of his Social Security card, and that they be personally delivered to him or given to his counselor. (*Id.*) In a response dated June 20, 2019,[6] Appellant was told his Social Security card would be "safeguarded in [his] property envelope only." (*Id.* ¶ 23.) On March 26, 2021, Appellant states he asked that a copy of his birth certificate, Social Security card,

---

[3] In his brief, Appellant lists his address as SCI-Phoenix in Collegeville, Pennsylvania. (Appellant's Brief (Br.) at 1-2.)

[4] With the exception of Mr. Geardner, whom Appellant identifies as a librarian, the other Appellees are identified as working in various capacities in the business office of one of the SCIs.

[5] This date appears to be in error as Appellant states this request followed his June 12, 2019 request.

[6] This date appears to be an error in light of Appellant's earlier allegation that he filed the grievance in April 2021.

and inmate identification be sent to his mother, and he was told the "[d]ocuments have not been received yet." (*Id.* ¶ 24.) Appellant states he was "stonewalled for information about his birth certificate for several months," which prompted him to file a grievance related to the missing document. (*Id.* ¶ 25.) According to Appellant, he was told SCI-Greene contacted SCI-Coal Township to inquire as to the whereabouts of his Social Security card and birth certificate. He avers he was told the Social Security card had arrived at SCI-Greene and was placed in the safe there, but the birth certificate had not yet been received by either SCI-Coal Township or SCI-Greene; he would be notified of its arrival. (*Id.*) Appellant claims he has a "stub" from Albany, New York, which reflects his birth certificate was delivered to SCI-Greene, which SCI-Greene denies. (*Id.* ¶¶ 26-27.) Appellant avers Appellees J. Carter, T. Pauley, and K. Patterson, the only individuals with access to the institutional safe, are responsible for, among other things, securing the personal property of inmates held in the safe, which they did not do in this case, and that T. Stewart, B. Hoffman, and N. Wilson as business managers ignored their duty to investigate the missing birth certificate. (*Id.* ¶¶ 28-30, 32, 46.) Appellant also alleges Mr. Geardner who, consistent with Department of Corrections (DOC) policy should personally collect legal mail, "mis[]plac[ed] recklessly" multiple pages of Appellant's legal documents by requiring him to place those documents in the inmate mailbox, despite flaws in the inmate mail system. (*Id.* ¶¶ 33-35, 48, 54.)

Appellant posits that Appellees were at all times "acting under the color of the law, to wit, under color of the statutes, ordinance, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania[,]" and engaged in willful misconduct; thus, Appellees are not immune from liability under Section 8550 of the Judicial Code, 42 Pa.C.S. § 8550. (*Id.* ¶¶ 7-20, 44-45, 48.) Appellant contends Appellees committed fraud and numerous criminal offenses, tampered with public documents, and violated his constitutional rights, including due process. (*Id.* ¶¶ 31,

3

36-65.) Specifically, Appellant argues that Appellees have deprived him of clearly established and well-settled constitutional rights while committing violations of the following statutory provisions:

> (a.) Freedom from the deprivation of liberty without due process of law;
> (b.) Freedom from illicit deprivation of personal property due to the commission of this tort;
> (c.) 42 Pa.C.S. § 8550 willful misconduct[;]
> (d.) 18 Pa.C.S. § 4911 tampering with public records or information;
> (e.) 18 Pa.C.S. [§] 4113 misapplication of entrusted property of government or financial institutions[;]
> (f.) [Section 13(a) of the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, as amended,] 35 P.S. § 780-113(a) failure to keep records[;]
> (g.) 18 Pa.C.S. [§] 4911 tampering w[ith] public records or information[;]
> (h.) 18 Pa.C.S. [§] 4113 misapplication of entrusted property[;]
> (i.) 18 Pa.C.S. [§] 4104 tampering with records or identification.

(*Id*. ¶ 64 (unnecessary capitalization and periods omitted).) Appellant seeks declaratory and injunctive relief in the form of changing law library policies and the manner in which personal property is secured, along with compensatory and punitive damages in an amount of $750,000.00. Appellant also requests that Appellees be terminated. (*Id*. ¶¶ 66-70.)

## II.    TRIAL COURT ORDER

Simultaneously with his Complaint, Appellant filed his petition seeking IFP status. Prior to service of the Complaint on Appellees, on November 17, 2021, the trial court issued its Order denying Appellant IFP status and dismissing the Complaint upon its determination that the Complaint is frivolous. (Trial Court

4

Order, filed 11/17/2021 (Order) at 7.) In doing so, the trial court relied upon Section 6602(e)(2) of the Act known as the Prison Litigation Reform Act (PLRA), 42 Pa.C.S. § 6602(e)(2), which states:

> Notwithstanding any filing fee which has been paid, the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant, if the court determines . . . [t]he prison conditions litigation is frivolous or malicious or fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief.

42 Pa.C.S. § 6602(e)(2).

In dismissing the Complaint, the trial court concluded Appellant's claims constituted prison conditions litigation that fell within the PLRA because Appellant "challenges [] Department of Corrections [(DOC)] policies and procedures relating to inmate personal property and the procedures to secure such personal property, i[.]e.[,] [S]ocial [S]ecurity cards, in the institutional safe." (Order at 6.) The trial court further reasoned:

> [I]t is the understanding of the instant [c]ourt that [] [DOC] rules and regulations regarding personal property are policies implemented by [] [DOC] to ensure, among other things, health and safety concerns within the institution. Therefore, based on [] [DOC] procedures, the PLRA, and precedent related to challenges to [] [DOC] policies and procedures relating to inmate personal property and the procedures to secure such personal property, i[.]e.[,] [S]ocial [S]ecurity cards, in the institutional safe, [Appellant]'s Complaint is determined to be frivolous.

(*Id.* at 7.)

Appellant filed a notice of appeal with the trial court, which was stamped filed December 28, 2021.[7] On January 6, 2022, the trial court filed its Opinion Pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure (Pa.R.A.P.) (1925(a) Op.), wherein it indicated that it had not ordered Appellant to file a concise statement of errors complained of on appeal and that it would be relying upon its reasoning contained in its Order for this appeal, with no additions to the record. (1925(a) Op. at 1 (unnumbered).)[8]

## III. DISCUSSION

### A. Timeliness of Appeal

Before we address Appellant's substantive issues, we first must determine whether this appeal is properly before us, for when an appeal has been untimely filed, the defect is jurisdictional and may be raised by the Court *sua sponte*. *Monroe Cnty. Bd. of Assessment Appeals v. Miller*, 570 A.2d 1386, 1388 (Pa. Cmwlth. 1990). Generally, a notice of appeal must be filed within 30 days after the docket entry of the order from which the appeal is taken. Pa.R.A.P. 903(a); *see also* Pa.R.A.P. 105(b) (providing "[a]n appellate court . . . may not enlarge the time for filing a notice of appeal"). Herein, the trial court's Order was entered on November 17, 2021, but Appellant's notice of appeal was not filed until December 28, 2021, making it facially untimely. Pa.R.A.P. 903(a).

However, a review of the record reveals that Appellant completed a handwritten notice of appeal dated December 16, 2021, wherein he indicated that he

---

[7] The appeal was originally taken to the Superior Court, which transferred the appeal to this Court on February 11, 2022.

[8] When a trial court dismisses an inmate's complaint *sua sponte* for its failure to state a cause of action for which relief may be granted, this Court's scope of review of the trial court's order is plenary. *Whitaker v. Wetzel*, 170 A.3d 568, 572 n.3 (Pa. Cmwlth. 2017).

had been transferred from SCI-Greene to SCI-Phoenix and had not received notice of the trial court's Order until that date. (Original Record No. 13). The Greene County Prothonotary Docket Entries support this assertion as they indicate that mail for Appellant had been returned as undeliverable on December 3, 2021, and again on December 14, 2021. Moreover, at the conclusion of his handwritten notice of appeal, Appellant states that he served the notice of appeal on the Greene County Prothonotary on December 16, 2021, the same day that he learned of the Order and one day before he had to file a timely notice of appeal. Under the prisoner mailbox rule, a prisoner's pro se appeal is deemed filed at the time it is given to prison officials or put in the prison mailbox. *Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997); *Sweesy v. Pa. Bd. of Prob. & Parole*, 955 A.2d 501, 502 (Pa. Cmwlth. 2008). The Pennsylvania Supreme Court expressly has applied the prisoner mailbox rule to all inmate appeals where an inmate is not represented by counsel. *Jones*, 700 A.2d at 426; *Kittrell v. Watson*, 88 A.3d 1091, 1097 (Pa. Cmwlth. 2014).

In light of the foregoing, and upon applying the prisoner mailbox rule, we conclude that Appellant timely filed his notice of appeal on December 16, 2021.[9] Accordingly, we proceed to address the substantive issues Appellant raises in his

---

[9] Normally, Appellant's statement on the certificate of service, without more, would be insufficient as proof that the prisoner mailbox rule applies herein. *See Sweesy*, 955 A.2d at 503 (holding that the court needs "reasonably verifiable evidence" of the date an inmate deposits an appeal, including, for example, "certificates of mailing, cash slips, affidavits, and prison operating procedures"). However, the circumstances surrounding Appellant's late receipt of the trial court's Order as described by Appellant, which are supported by the Greene County Prothonotary Docket Entries, substantiate Appellant's claim that December 16, 2021, was the first opportunity he had to file an appeal from the Order as it appears the Order was twice returned as undeliverable. Thus, the breakdown in the administration of the court would also permit the appeal to be considered. *See Best Courier v. Dep't of Lab. & Indus. Off. of Unemployment Comp. Tax Servs.*, 220 A.3d 696, 701 (Pa. Cmwlth. 2019).

brief pertaining to the denial of his request to proceed IFP and dismissal of his Complaint.

**B.    Substantive Issues**

Appellant first argues the trial court erred in determining his Complaint constitutes prison conditions litigation and denying what he describes as his "professional liability tort" claims against Appellees. (Appellant's Brief (Br.) at 2.) Appellant states that contrary to the trial court's determination, he did not file the action seeking items Appellees refused to give him but, rather, he did so to challenge their "gross negligence" resulting in the loss of his original birth certificate, as well as pages of documents pertaining to an unrelated litigation. (*Id*. at 2-3.) Appellant relies upon this Court's holding in *Williams v. Beard*, 67 A.3d 182 (Pa. Cmwlth. 2013), wherein we reversed and remanded the matter to the trial court upon finding the trial court had erred in basing its finding that the action was frivolous on balancing the costs of litigation against the cost of the damaged footlocker for which the defendant requested reimbursement. *Id*. at 184-85.

Herein, unlike the situation presented in *Williams*, the trial court did not base its finding of frivolity upon the monetary value of the items which Appellant seeks. Rather, the trial court found Appellant's Complaint "challenges [] [DOC's] policies and procedures relating to inmate personal property and the procedures to secure such personal property, i[.]e.[,] [S]ocial [S]ecurity cards, in the institutional safe." (Order at 6.) Following our review, we find this is only partly correct.

Appellant's allegations against the named prison officials regarding the handling of his personal documents and his requests for reforms in the prison law library and its mailing procedures assert claims that constitute "prison conditions litigation." Section 6601 of the PLRA defines prison conditions litigation as:

8

[a] civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison. The term includes an appeal. The term does not include criminal proceedings or habeas corpus proceedings challenging the fact or duration of confinement in prison.

42 Pa.C.S. § 6601. Because it concerns prison conditions litigation, the Complaint is subject to Section 6602(e)(2) of the PLRA, which allows a trial court to dismiss prison conditions litigation where the complaint "fails to state a claim upon which relief may be granted[,] or [that] the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief." 42 Pa.C.S. § 6602(e)(2); *Bailey v. Miller*, 943 A.2d 1007, 1009 (Pa. Cmwlth. 2008). "Accordingly, the defense of sovereign immunity can provide a basis for dismissal of a prison conditions lawsuit." *McCool v. Dep't of Corr.*, 984 A.2d 565, 570 (Pa. Cmwlth. 2009).

This Court previously explained the applicability of sovereign immunity as follows:

Sovereign immunity acts as a bar to suits against Commonwealth parties, including its officials and employees acting within the scope of their duties. 1 Pa.C.S. § 2310. Establishing a limited list of exceptions to immunity, the General Assembly adopted what is commonly referred to as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8501-8502, 8521-8527. Section 8522 of the Sovereign Immunity Act waives "immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity," for specifically enumerated categories of acts. 42 Pa.C.S. § 8522. A "Commonwealth party" is defined in Section 8501 as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. Thus, when an employee of a Commonwealth agency, such as a DOC employee, is acting within the scope of his or her duties, the employee is shielded by the doctrine of

9

> sovereign immunity from liability for tort claims arising from negligent acts that do not fall within the statutory exceptions listed in Section 8522(b) of the Sovereign Immunity Act. 1 Pa.C.S. § 2310; 42 Pa.C.S. § 8522(a)-(b). Sovereign immunity is not waived for intentional acts committed by a Commonwealth employee acting within the scope of his or her employment. *La Frankie v. Miklich*, . . . 618 A.2d 1145, 1149 ([Pa. Cmwlth.] 1992).

*Paluch v. Pa. Dep't of Corr.*, 175 A.3d 433, 437-38 (Pa. Cmwlth. 2017). One of the enumerated exceptions to sovereign immunity is for "damages caused by . . . [t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including . . . property of persons held by a Commonwealth agency." 42 Pa.C.S. § 8522(b)(3).

"Pennsylvania is a fact-pleading jurisdiction; consequently, a pleading must not only apprise the opposing party of the asserted claim, [but] it must also formulate the issues by summarizing those facts essential to support the claim." *Richardson v. Wetzel*, 74 A.3d 353, 356-57 (Pa. Cmwlth. 2013) (internal quotation marks omitted). Here, Appellant casts his Complaint, on the one hand, as sounding in negligence. For instance, Appellant alleges J. Carter, T. Pauley, and K. Patterson owed a duty to safeguard his personal documents, which was breached when they were lost. (Complaint ¶¶ 28-30.) However, Appellant also asserts that T. Stewart, B. Hoffman, and N. Wilson "intentional[ly] ignored the fact that his personal property was missing and[/]or destroyed." (Complaint ¶ 32.) He also claims Mr. Geardner engaged in "willful misconduct." For example, he describes Mr. Geardner's willful misconduct in requiring legal materials to be passed through the inmate mailing system which he "knowingly" knew to be "flawed." (*Id.* ¶ 48.) This Court has held that for purposes of the Tort Claims Act, willful misconduct is viewed as synonymous with an intentional tort. *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Cmwlth. 1995). As stated above, generally, intentional tort claims are barred by

sovereign immunity.[10] *Paluch*, 175 A.3d at 438. Notwithstanding, where, as here, an inmate pleads both negligence and intentional tort claims, we have held that because a "plaintiff is the master of his claim" and can plead causes of action in the alternative, it was error for a trial court to dismiss an inmate's complaint in its entirety as frivolous. *Nifas v. Williams* (Pa. Cmwlth., No. 319 C.D. 2019, filed July 25, 2019), slip op. at 7.[11] Thus, to the extent the Complaint alleges negligence against J. Carter, T. Pauley, and K. Patterson with regard to their duty to secure documents pertaining to an inmate's identity, (Complaint ¶¶ 28-30), the trial court erred in dismissing those claims as frivolous.[12]

Appellant also avers Appellees "committed intentional fraud." (Complaint ¶ 31.) As stated above, intentional acts are barred by sovereign immunity. *Paluch*, 175 A.3d at 438. Furthermore, under Pennsylvania's pleading rules, averments of fraud must be stated with particularity, although Appellant's Complaint presents only vague generalizations in this regard. Pennsylvania Rule of Civil Procedure 1019(b), Pa.R.Civ.P. 1019(b). Accordingly, to the extent Appellant attempts to assert claims against Appellees for fraud, we conclude the trial court did not err in dismissing those claims as frivolous.

---

[10] Pursuant to Section 8550 of the Judicial Code, sovereign immunity is waived where the injury is caused by willful misconduct of an employee. 42 Pa.C.S. § 8550. However, Section 8550 applies only to local agency employees. *See id.* ("In any action against a local agency or employee thereof . . . .") DOC employees, such as Appellees, are Commonwealth agency employees. *Williams v. Shawley* (Pa. Cmwlth., No. 1250 C.D. 2018, filed June 27, 2019), slip op. at 16.

[11] While not binding, this Court's unreported opinions may be cited for their persuasive authority pursuant to Rule 126(b)(1)-(2) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b)(1)-(2), and Section 414(a) of our Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[12] It appears from Appellant's own allegations that his Social Security card was received at SCI Greene and kept in the prison safe; therefore, he has not stated a claim for the loss of this document. (Complaint ¶ 25.)

The Complaint further alleges Appellees violated numerous criminal statutes and seeks for Appellees to be criminally charged as a result thereof. (Complaint ¶¶ 36-41.) In Pennsylvania, there is a procedure by which private criminal complaints can be lodged. *See* Pennsylvania Rule of Criminal Procedure 506, Pa.R.Crim.P. 506. This involves the affiant submitting the complaint first to the attorney for the Commonwealth for approval and, if the complaint is not approved, the affiant may petition the court of common pleas for review of that decision. Pa.R.Crim.P. 506 (A). Appellant did not follow this procedure. Instead, Appellant filed a civil action alleging Appellees violated various criminal statutes and seeking to have them criminally charged. These allegations are outside the trial court's jurisdiction in a civil action, and, thus, dismissal of those claims was not in error.

Appellant also claims Mr. Geardner, who was required to safeguard his documents, was "recklessly" responsible for losing "dozens" of his legal documents by requiring him to deliver them through the prison mail system with "no care of its return or delivery." (Complaint ¶¶ 33-35, 48, 53, 62-63.) Specifically, Appellant refers to 27 pages of legal documents consisting of "[d]ecl[a]rations, [l]egal evidence, and procedural documents." (*Id*. ¶ 34.) However, while these allegations pertain to intentional action on the part of Mr. Geardner, Appellant also sets forth allegations sounding in negligence that as the "head librarian," Mr. Geardner through "a very flawed system" "process[ed] sensitive legal mail with no care of its return or delivery." (*Id*. ¶ 48.) Initially, we observe that this Court appears to have viewed personal legal documents and mail under the umbrella of personal property. *See White v. Walter* (Pa. Cmwlth., No. 1341 C.D. 2019, filed Feb. 9, 2021), slip op. at 9-10 (finding inmate's allegations in his complaint that prison officials negligently mishandled his "personal property (mail)" failed where they had not been pled with specificity); *Samuels v. Walsh* (Pa. Cmwlth., No. 318 C.D. 2014, filed Nov. 17, 2014), slip op. at 2-4, 9-10 (finding that where an inmate's "personal property and

legal documents" were left unattended and were subsequently lost, and the items were in the "care, custody and control" of prison employees, inmate was "not prohibited from pursuing a negligence action against [prison employees] for the loss of his property" as "[a] factfinder could conclude that it was reasonably foreseeable that in a prison, an inmate's personal property would be misplaced or stolen if not secured"). Thus, following our review of the Complaint, we find that Appellant pled in his Complaint that Mr. Geardner had a duty to "secure and protect" his property (legal documents) once those materials were deposited in the inmate mailbox. *See Samuels*, slip op at 9-10. Accordingly, the trial court erred in finding this claim to be wholly frivolous and dismissing it at this stage of the proceedings.

To the extent Appellant seeks injunctive relief due to DOC mailing policies, it is axiomatic that Appellees' decisions addressing internal prison operations are largely outside this Court's original or appellate jurisdiction. *Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 358-59 (Pa. 1998); *Winton v. Pa. Dep't of Corr.*, 263 A.3d 1240, 1243 (Pa. Cmwlth. 2021). The Pennsylvania Supreme Court has reasoned that, "internal prison operations are more properly left to the legislative and executive branches, and . . . prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference." *Bronson*, 721 A.2d at 358.

Finally, Appellant avers that J. Carter has committed numerous criminal offenses against him

> pursuant to the statutory provisions found at 18 Pa.C.S. [§] 4113[] misapplication of entrusted property of government or financial institutions; § 4911[] Tampering with public records or information; § 8550[] Willful misconduct; § 7507[] Breach of privacy; § [sic] Invasion of privacy; Failure to keep records, 35 P.S. § 780-113(a); Tampering w[ith] public records or information [§] 4911; Misapplication of entrusted property, [§] 4113 and Tampering with records or identification [§] 4104(a)M1.

13

(Complaint ¶ 36.) Appellant further alleges that P. Pauley, K. Patterson, T. Stewart, B. Hoffman, and N. Wilson each "has committed a criminal offense(s) against [Appellant named] in paragraph 36[] [i]ncluding and not limited to criminal conspiracy to commit all the above[-]named offenses." (Complaint ¶¶ 37-38, 40-41a.)[13] In addition, Appellant alleges Mr. Geardner has committed "the following offense(s) 18 Pa.C.S. § 8550 willful misconduct; misapplication of entrusted property, [§] 4113; Failure to keep records, 35 P.S. § 780-113(a)." (Complaint ¶ 39.)

Other than his bald allegations punctuated with statutory citations, Appellant has failed to plead material facts to support a viable claim that Appellees committed any of the enumerated criminal offenses or violated any of his constitutional rights. In fact, Appellant does not even mention, let alone apply to the named Appellees or their specific actions, any of the elements of the enumerated offenses. *Tedesco v. Link* (Pa. Cmwlth., No. 709 C.D. 2020, filed May 16, 2023), slip op. at 7-8. Moreover, "[a] complaint claiming civil conspiracy must allege material facts which will either directly or inferentially establish elements of conspiracy." *Brown v. Blaine*, 833 A.2d 1166, 1173 (Pa. Cmwlth. 2003). Appellant does not allege specific facts indicating a plan or an agreement among Appellees to act unlawfully, but merely makes general allegations that they did so. "Because he has not pled sufficient facts to plead a conspiracy as well as the necessary predicate illegal act necessary for there to be a civil conspiracy, the trial court properly dismissed this count." *Id.*

---

[13] There are two paragraphs numbered 41 in the Complaint. We refer to the second as 41a.

14

## IV.   CONCLUSION

This Court may affirm a trial court's dismissal of claims on grounds different from those upon which the trial court relied. *McCool*, 984 A.2d at 570-72; *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 618 n.9 (Pa. Cmwlth. 2006). Even though we find the Complaint is not barred in its entirety, we do find the trial court properly dismissed Appellant's intentional tort claims, fraud claims, prison reform claims, and his claims pertaining to violations of his constitutional rights and criminal offenses against Appellees. However, for the foregoing reasons, we reverse the trial court's dismissal of Appellant's negligence claims against J. Carter, T. Pauley, and K. Patterson for their alleged failure to secure his identifying documents. We also reverse the trial court's dismissal of Appellant's negligence claim against Mr. Geardner in connection with his alleged loss of Appellant's legal documents. We remand this matter to the trial court for further proceedings consistent with this Opinion.

**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rev. Augustus Simmons Enoxh,        :
                            Appellant    :
                                   :
            v.                   :    No.  243 C.D. 2022
                                   :
J. Carter, T. Pauley, K. Patterson,   :
Mr. Geardner, Librarian, B. Hoffman,  :
T. Stewart, N. Wilson              :

# O R D E R

    **NOW**, August 25, 2023, the Order of the Court of Common Pleas of Greene County date November 17, 2021, is **AFFIRMED IN PART** with regard to the court's dismissal of Appellant's intentional tort claims, fraud claims, prison reform claims, and his claims pertaining to violations of his constitutional rights and criminal offenses against Appellees **and REVERSED IN PART** with regard to Appellant's negligence claims against J. Carter, T. Pauley, and K. Patterson relating to their alleged failure to secure his birth certificate and inmate identification card, and against Mr. Geardner relating to the alleged loss of Appellant's legal documents. The matter is remanded to the trial court for further proceedings consistent with this Opinion.  Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** President Judge